**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHASTITY ANN HART,** | ) | |
| **o/b/o C.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-196 Erie** |
| | ) | |
| **CAROLYN W. COLVIN,[1] ACTING** | ) | **Judge Maurice B. Cohill** |
| **COMMISSIONER OF SOCIAL** | ) | **Magistrate Judge Susan Baxter** |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the Plaintiff's motion for summary judgment (*ECF No. 12*) be denied, that the Defendant's motion for summary judgment (*ECF No. 14*) be granted, and that the final decision of the Commissioner of Social Security ("Commissioner") be affirmed.

### II.    REPORT

#### A.    INTRODUCTION

Plaintiff Chastity Ann Hart ("Hart") brings this action on behalf of her son, C.L.C., seeking judicial review of the Commissioner's decision denying an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue.  Social Security History-Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on November 27, 2013).  Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

§§ 1381-1383f].  The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.  (ECF Nos. 12, 14).

### B.    PROCEDURAL HISTORY

Hart protectively applied for SSI benefits on January 6, 2010, alleging that C.L.C. had become "disabled" on January 5, 2010.  (R. at 115, 137).  The application was administratively denied on April 19, 2010.  (R. at 53).  Hart responded on May 5, 2010, by filing a request for an administrative hearing.  (R. at 57-59).  The requested hearing was originally scheduled to take place on March 1, 2011.  (R. at 29).  It was postponed in order to give Hart an opportunity to seek representation.[2]  (R. at 31-33).  On June 2, 2011, the hearing was held before Administrative Law Judge ("ALJ") O. Price Dodson.  (R. at 29).  Hart and C.L.C., who were represented by counsel, appeared and testified in Erie, Pennsylvania.  (R. at 13, 39-49).  The ALJ presided over the hearing from Norfolk, Virginia, by means of an electronic teleconferencing apparatus.  (R. at 13).  In a decision dated June 23, 2011, the ALJ determined that C.L.C. was not "disabled" within the meaning of the Act.  (R. at 10-25).

On August 17, 2011, Hart sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  (R. at 112-114).  The Appeals Council denied the request for review on June 25, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case.  (R. at 1).  Hart commenced this action on August 22, 2012, seeking judicial review of the Commissioner's decision.  (ECF No. 1).  Hart and the Commissioner filed motions for summary judgment on August 16, 2013, and September 16, 2013, respectively.  (ECF Nos. 12, 14).  Those motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

---

[2] Although the ALJ afforded Hart an opportunity to proceed without counsel, he also provided her with information about how she could secure the services of an attorney.  (R. at 31-33).  Hart opted to postpone the hearing and seek representation.  (R. at 32).

## C.      STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

The portion of Title XVI defining a minor claimant's eligibility for benefits provides that an individual under the age of eighteen shall be considered to be "disabled" if he or she has a "medically determinable physical or mental impairment" resulting in "marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(i).  A minor claimant seeking to secure benefits under the Act must establish that his or her impairment "can be expected to result in death," or that it "has lasted or can be expected to last for a continuous period of not less than 12

months." *Id.* An individual who engages in "substantial gainful activity" does not qualify as "disabled" regardless of whether "marked and severe functional limitations" result from his or her impairment. 42 U.S.C. § 1382c(a)(3)(C)(ii).

The Commissioner's regulations implementing Title XVI's statutory mandate provide for a three-step sequential evaluation process to determine whether a claimant under the age of eighteen is statutorily disabled. 20 C.F.R. § 416.924(a). At the first step, the Commissioner considers whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If that question yields an affirmative answer, the claimant is not disabled. *Correa v. Commissioner of Social Security*, 381 F.Supp.2d 386, 393 (D.N.J. 2004). If the claimant is not engaging in substantial gainful activity, the Commissioner inquires as to whether the claimant has a "severe" impairment. 20 C.F.R. § 416.924(c). An impairment does not qualify as "severe" if it constitutes only "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* Where a claimant has multiple impairments, the combined effect of those impairments must be considered for the purpose of determining whether the resulting functional limitations are "severe." 20 C.F.R. § 416.924a(b)(4). If the claimant surmounts that hurdle, the final step of the process requires a determination as to whether his or her impairment (or combination of impairments) meets, medically equals or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). A finding of medical or functional equivalence results in an award of benefits. *Correa*, 381 F.Supp.2d at 393.

Under the Commissioner's regulations, the issue of functional equivalence is measured by reference to the following six domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and

manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.  20 C.F.R. §

416.926a(b)(1)(i)-(vi).  A claimant's impairments functionally equal a Listed Impairment if they

result in "marked" limitations in two domains or an "extreme" limitation in one domain.  20

C.F.R. § 416.926a(a).  A "marked" limitation "interferes seriously with [a claimant's] ability to

independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An

"extreme" limitation "interferes very seriously with [a claimant's] ability to independently

initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision.  In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law.  That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency.  If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis.  To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.  The United States Court of Appeals for the Third Circuit has

recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v.*

*Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four

corners of the ALJ's decision.  *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

### D.    THE ALJ'S DECISION

In his decision, the ALJ determined that C.L.C. had not engaged in substantial gainful

activity subsequent to the date of his application.  (R. at 16); 20 C.F.R. § 416.924(b).  C.L.C. was

found to be suffering from Tetralogy of Fallot[3] and an adjustment disorder. (R. at 16). These impairments were deemed to be "severe" under the Commissioner's regulations. (R. at 16); 20 C.F.R. § 416.924(c). The ALJ concluded that C.L.C.'s impairments did not meet or medically equal a Listed Impairment. (R. at 16). Moving on to the issue of functional equivalence, the ALJ determined that C.L.C. had a "less than marked" degree of limitation in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, and health and physical well-being. (R. at 19-24). No limitations were found in the domains of interacting and relating with others and caring for oneself. (R. at 21-23).

### E. DISCUSSION

C.L.C. was born on June 24, 2002. (R. at 16, 39, 115). He was born with a congenital heart defect known as Tetralogy of Fallot. (R. at 328). On August 29, 2003, Dr. Sanjiv Gandhi performed open-heart surgery on C.L.C. to address the problem. (R. at 296-299). The surgery yielded an "excellent" result. (R. at 329). Dr. Linda M. Russo, a pediatric cardiologist, observed on October 18, 2005, that C.L.C. had "no physical limitations." (R. at 321). Nonetheless, she suspected that, over the course of time, C.L.C.'s "significant pulmonary insufficiency" could cause "limited exercise tolerance." (R. at 321).

Dr. Russo examined C.L.C. on October 20, 2009. (R. at 180-182). At that time, C.L.C. was in the second grade. (R. at 181). During the visit, Hart complained that C.L.C. was "tired all the time" because of an inability to sleep. (R. at 180). Dr. Russo informed Hart that "symptoms of sleepiness [we]re not typically associated with cardiac findings." (R. at 181). No restrictions were placed on C.L.C.'s activities. (R. at 181-182). Hart was told that while C.L.C.

---

[3] In a memorandum submitted to the ALJ before the hearing, Hart's counsel described this impairment as "a rare condition caused by the combination of four heart defects that are present at birth." (R. at 93, n. 1).

would most likely have to undergo "pulmonary valve replacement" surgery at some point, the procedure was "very uncommon in the first decade or two of [one's] life."  (R. at 181).

On October 19, 2010, C.L.C. returned to Dr. Russo's office for a follow-up examination. (R. at 287-288).  The cardiovascular examination yielded normal results.  (R. at 287).  Aside from "free pulmonary insufficiency and a dilated right ventricle," diagnostic testing uncovered "no unusual findings."  (R. at 287).  Dr. Russo reported that C.L.C. was "doing quite well."  (R. at 287).  She placed no restrictions on his ability to exercise.  (R. at 288).

Dr. Nathan Moore, C.L.C.'s pediatrician, noted on January 7, 2011, that C.L.C. did not want to go to school because of conflicts with his third-grade teacher.  (R. at 374).  Dr. Robert E. Wilson performed a psychological evaluation of C.L.C. one week later.  (R. at 390-394).  C.L.C. was depressed because he had recently lost two family members in car accidents and a third family member to cancer.  (R. at 390).  Dr. Wilson also observed that C.L.C. was "very anxious and nervous about going to school."  (R. at 390).  Although C.L.C.'s grades were below average, objective testing designed to uncover learning disabilities revealed that he did not qualify for an "individualized education program"[4] under the Individuals with Disabilities Education Act ("IDEA") [42 U.S.C. § 1400 *et seq.*].  (R. at 393).  Dr. Wilson reported that C.L.C. had recently been transferred to a different third-grade teacher.  (R. at 393).  C.L.C. later received counseling services to address "ongoing stressors" both at home and at school.  (R. at 395).

On February 25, 2011, Dr. Moore stated that C.L.C. had been "moved to another room in school" and was "doing better."  (R. at 382).  In the aftermath of the transfer, C.L.C. was "more outgoing" and received better grades.  (R. at 382).  Dr. Moore attributed C.L.C.'s "main problem" during the previous six weeks to "school issues."  (R. at 382).

---

[4] 42 U.S.C. §§ 1412(a)(4), 1414(d).

At the hearing, C.L.C. testified that he frequently needed to rest for one to two minutes while playing with friends. (R. at 42). When asked whether C.L.C. had ever repeated a grade, Hart testified that she "would not allow" him to be held back in school. (R. at 43). She stated that his weakened immune system typically necessitated the provision of medical treatment every one to two weeks. (R. at 46). Hart explained that C.L.C. sometimes needed to be pulled around in a wagon because of fatigue. (R. at 49).

Hart challenges the ALJ's factual findings only with respect to the domains of "acquiring and using information" and "attending and completing tasks." (ECF No. 13 at 8-11). She does not question the factual findings pertaining to the other four domains. Consequently, the Court's inquiry in this case is quite narrow.

Dr. V. Rama Kumar, a non-examining psychological consultant, opined on March 24, 2010, that C.L.C. had a "less than marked" degree of limitation in the domain of "health and physical well-being" and no limitations in the remaining five domains. (R. at 268-269). Despite Dr. Kumar's position that C.L.C. had no limitations in the domains of "acquiring and using information" and "attending and completing tasks," the ALJ concluded that C.L.C. had a "less than marked" degree of limitation in those domains. (R. at 19-21). In light of these findings, it is clear that the ALJ "did not merely rubber stamp" Dr. Kumar's assessment. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011).

On February 24, 2010, C.L.C.'s second-grade teacher[5] evaluated his level of functioning in the specific domains recognized under the Commissioner's regulations. (R. at 148-155). No "serious" or "very serious" problems were identified with respect to the domain of "attending and completing tasks." (R. at 150). Within the domain of "acquiring and using information," the teacher reported that C.L.C. had "serious" problems utilizing his abilities to learn new material,

---

[5] The name of the teacher is illegible. (R. at 155).

recall and apply previously-learned material, and apply problem-solving skills in class discussions. (R. at 149). Among the remaining seven abilities listed on the form, the teacher indicated that C.L.C. had six "obvious" problems and one "slight" problem. (R. at 149).

Sandi George ("George"), C.L.C.'s third-grade teacher, indicated on May 5, 2011, that C.L.C. had no "serious" or "very serious" problems in the domain of "attending and completing tasks." (R. at 171). With respect to the domain of "acquiring and using information," she reported that he had "serious" problems in his abilities to comprehend and complete math problems, convey organized oral expectations, and express ideas in written form. (R. at 170). Among the remaining seven abilities, George asserted that C.L.C. had six "obvious" problems and one "slight" problem. (R. at 170). In the narrative portion of her report, George stated that C.L.C. was "not working at the level of his peers." (R. at 170).

Hart relies on the reports completed by C.L.C.'s teachers in order to dispute the ALJ's findings in the relevant domains. (ECF No. 13 at 8-11). She maintains that the ALJ did not even acknowledge George's assessment in his decision. (*Id.* at 11). A close examination of the decision, however, confirms that Hart's contention is incorrect. The reports completed by the second-grade teacher and George appear in the record as Exhibits 4E and 7E. (R. at 148-155, 169-176). The portion of the ALJ's decision discussing the two domains in question contains several citations to those exhibits. (R. at 20-21). The decision also contains specific references to the observations made by the two teachers. (R. at 20-21). The ALJ was not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. The fact that he did not refer to George by name is inconsequential.

An administrative law judge must articulate his or her reasons for rejecting evidence supporting a claimant's allegation of disability. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d

Cir. 2003). Hart asserts that the ALJ failed to "supply a rationale for rejecting" the reports prepared by C.L.C.'s teachers. (ECF No. 13 at 11). Those reports, however, did not support a finding of functional equivalence. As discussed earlier, an "extreme" limitation "interferes *very seriously* with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(emphasis added). Neither teacher indicated that C.L.C. had a "very serious" problem in a particular category. (R. at 148-155, 169-176). A "marked" limitation "interferes *seriously* with [a claimant's] ability to initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(emphasis added). With respect to the domain of "acquiring and using information," the teachers each reported that C.L.C. was "seriously" limited in only three out of ten categories. (R. at 149, 170). Both teachers indicated that C.L.C. had no "serious" problems in the thirteen categories relevant to the domain of "attending and completing tasks." (R. at 150, 171).

Since neither teacher reported that C.L.C. had a "very serious" problem, the evidence relied upon by Hart would not support a finding that C.L.C. had an "extreme" limitation in a particular domain. (R. at 148-155, 169-176); 20 C.F.R. § 416.926a(e)(3). The two teachers each indicated that C.L.C. had "serious" problems in three out of the ten categories relevant to the domain of "acquiring and using information." (R. at 150, 170). Under the Commissioner's regulations, an impairment that "seriously" limits "only one activity" can sometimes be used to demonstrate that a claimant is "markedly" limited in a given domain. 20 C.F.R. § 416.926a(e)(2). Consequently, the teachers' reports could *potentially* establish that C.L.C. was "markedly" limited in the domain of "acquiring and using information." (R. at 149, 170). Even if the reports are read in that light, however, they would not demonstrate that C.L.C. was disabled during the relevant period of time. A claimant's impairments functionally equal a

Listed Impairment if they result in "marked" limitations in *two* domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). Assuming *arguendo* that C.L.C. was "markedly" limited in the domain of "acquiring and using information," the existence of a *second* "marked" limitation could not be established on the basis of the existing record. Both teachers reported that C.L.C. had no "serious" problems pertaining to the domain of "attending and completing tasks." (R. at 150, 171). The evidence underpinning Hart's motion for summary judgment is facially insufficient to establish C.L.C.'s entitlement to benefits. It follows *a fortiori* that the ALJ's factual findings are "supported by substantial evidence." 42 U.S.C. § 405(g).

Because "Social Security [disability] proceedings are inquisitorial rather than adversarial," the Commissioner has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)(plurality opinion). Hart contends that the ALJ erred in relying on Dr. Kumar's opinion without ordering a consultative psychological evaluation or procuring the testimony of a medical expert. (ECF No. 13 at 12-13). This argument is unavailing. As C.L.C.'s mother, Hart was in the best position to provide information about his medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The evidence submitted by C.L.C.'s treating physicians did not establish his entitlement to benefits. Hart points to nothing in the record which suggests that those physicians believed C.L.C. to be disabled. (ECF No. 13 at 12-13). Objective testing revealed that C.L.C. was not entitled to the special accommodations afforded to "disabled" students under the IDEA. (R. at 393). In the absence of evidence suggesting that C.L.C. was disabled, the ALJ was not required

to search for medical opinions establishing the existence of a disabling condition.[6] *Wallace v. Reliance Standard Life Insurance Co.*, 318 F.3d 723, 724 (7th Cir. 2003).

### F. CONCLUSION

The Commissioner's decision denying the application for SSI benefits filed on C.L.C.'s behalf is "supported by substantial evidence." 42 U.S.C. § 405(g). It is respectfully recommended that Hart's motion for summary judgment (*ECF No. 12*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 14*) be granted, and that the Commissioner's decision be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

cc:     All counsel of record

        Maurice B. Cohill
        United States District Judge

---

[6] A treating physician's opinion can be rejected outright only on the basis of "contradictory medical evidence." *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). An administrative law judge cannot "employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If Hart had submitted medical evidence suggesting that C.L.C. was disabled, the ALJ may have been required to procure an opinion from a medical expert in order to reject that evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). Since evidence of a disabling impairment was never presented in this case, the ALJ was under no obligation to order a consultative evaluation. A claimant bears the burden of presenting evidence supporting his or her allegation of *per se* disability at the third step of the sequential evaluation process. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).